# EXHIBIT A

Won Chu
1800 Yermo Place
Fullerton, CA 92833
Tel: (626) 465-6164
Email: chuscoin@hotmail.com
Plaintiff, In Pro Per

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE

MAY 1 5 2026

DAVID H. YAMASAKI, Clerk of the Court

BY:_____.DEPUTY

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ORANGE

CENTRAL JUSTICE CENTER

30-2026

01569935

In Re: The Matter of )
)
WON CHU, )
) Case No.:
Plaintiff / Petitioner, )
) **COMPLAINT FOR CIVIL RIGHTS**
) **VIOLATIONS**
vs. )
) Bradley Erdosi
)
ORANGE COUNTY SHERIFF ) Assigned for All Purposes
DEPARTMENT, )
)
Defendant / Respondent. )

Plaintiff, Won Chu, alleges as follows:

**PARTIES**

1.    Plaintiff is a resident of the City of Fullerton, located at 1800 Yermo Place, Fullerton, Orange County, California.

2.    Defendant is the Orange County Sheriff Department, a municipal government entity situated at 400 W. Civic Center Drive, 6th Floor, Santa Ana, Orange County, California.

**JURISDICTION AND VENUE**

3.    This Court has jurisdiction pursuant to California Code under 28 U.S.C. § 84.

4.    Venue is appropriate in this Court pursuant to California Code under 28 U.S.C. § 1391 because both parties are located within this judicial district, and the alleged events occurred within this district.

-1-

## FACTS

5.      Plaintiff is a 64-year-old Chinese-American male of Asian descent, born on August 9, 1961, and residing in the City of Fullerton, Orange County, California. Plaintiff's name is Won Chu. Plaintiff is a retired police officer from the Los Angeles Police Department. Plaintiff served the community for approximately thirty-two (32) years, from February 4, 1985, through February 17, 2017.

6.      Plaintiff retired due to a sudden stroke suffered while on duty. Plaintiff later experienced a recurrence of stroke in 2021. As a result, Plaintiff remains under the care of a neurologist and takes two (2) medications to prevent recurrence of stroke, blackout, and seizure. The medications prescribed to Plaintiff are Lamotrigine (300 MG) and Fycompa (2–4 MG). Plaintiff takes these medications daily, three (3) times per day.

7.      Prior to retirement, Plaintiff served as a patrol supervisor and also worked as a detective filing cases for the Los Angeles Police Department. Plaintiff therefore possesses knowledge regarding the duties of care required of law enforcement officers, including the obligation to abide by and uphold the law and applicable legal regulations. Law enforcement officers are bound by professional standards of conduct that are beyond reproach and require strict adherence to legal, ethical, and policy mandates.

8.      On or about June 18, 2025, at approximately 1900 hours, Plaintiff was taken to the Fullerton Police Department regarding an unrelated incident. While at the Fullerton Police Department, Plaintiff became involved in a verbal dispute with one of the female jailers. The female jailer subsequently accused Plaintiff of battering her. Plaintiff was thereafter arrested for Battery on a Police Officer, in violation of California Penal Code § 243(b).

9.      On or about June 18, 2025, at approximately 2100 hours, Plaintiff was transported to the Orange County Sheriff Department and subjected to prolonged detention while awaiting arraignment. At approximately 2200 hours on the same date, the Fullerton Police Department female jailer informed Orange County Sheriff Department deputies that Plaintiff had battered her. The accusation and rumor spread rapidly among the deputies, creating an intensified hostile and retaliatory atmosphere within the facility.

10.     When Plaintiff entered the Orange County Sheriff Department ("OCSD") Inmate Reception Center ("IRC"), Plaintiff observed that many custodial deputies were staring at him with visible anger and resentment. Law enforcement is a close-knit community, and an alleged attack on one officer is often perceived as an attack on all officers. Deputies may therefore have felt personal anger regarding the alleged incident. Plaintiff became fearful because he believed the deputies thought he had attacked a police officer. Plaintiff became scared.

## FIRST CLAIM FOR RELIEF

## DERELICTION OF DUTY / VIOLATION OF FOURTEENTH AMENDMENT / NEGLIGENCE

11.     On or about June 19, 2025, at approximately 0400 hours, Plaintiff was confined in his first cell. Plaintiff noticed that each time he was placed into a different cell, deputies would write the letters "PCHA" (Protective Custody Administrative Housing) below Plaintiff's last name. Plaintiff understood these markings to be intended to warn other deputies that Plaintiff was considered a high-risk inmate and had allegedly assaulted a police officer.

12.     Approximately ten (10) minutes after entering the cell, Plaintiff began experiencing tunnel vision, which Plaintiff recognized as a warning sign preceding a blackout or seizure. Plaintiff immediately waved his hands toward the custodial deputies in an attempt to obtain assistance for his urgent medical condition. Since Plaintiff's arrest, Plaintiff had not been provided any opportunity to take his prescribed daily stroke medications.

13.     When Plaintiff requested assistance, the custodial deputies merely glanced at Plaintiff and failed or refused to respond. The OCSD deputies had an affirmative duty of care to provide assistance to inmates experiencing medical distress. By refusing to respond to Plaintiff's urgent medical condition, the OCSD deputies breached their duty of care and demonstrated deliberate indifference to Plaintiff's health and safety. Moments later, Plaintiff lost consciousness and fell to the floor, striking his head against the ground. But for the deputies' failure to respond to Plaintiff's obvious medical emergency, Plaintiff would not have sustained head injuries. The deputies' conduct was the actual and proximate cause of Plaintiff's injuries.

-3-

14. After regaining consciousness, Plaintiff observed one of the deputies standing over him and stating, "Stop faking it, and wake up fucker," thereby displaying deliberate indifference toward Plaintiff's serious medical condition. Although the deputy observed Plaintiff in obvious acute distress, the deputy deliberately disregarded the clear signs of Plaintiff's medical emergency and falsely accused Plaintiff of fabricating the incident.

15. This deputy's conduct went beyond mere negligence and constituted a violation of Plaintiff's rights under the Fourteenth Amendment to the United States Constitution. The deputy's conduct demonstrated a willful disregard for Plaintiff's substantial risk of serious harm.

16. The OCSD deputies owed Plaintiff a duty of care to adequately monitor Plaintiff's physical and medical condition. Defendants breached that duty through their subjective deliberate indifference to Plaintiff's serious medical and physical needs. The deputies acted negligently and recklessly by disregarding Plaintiff's safety, and their actions and inactions were the direct and proximate cause of Plaintiff's injuries and damages.

## SECOND CLAIM FOR RELIEF

## ASSAULT / DELIBERATE INDIFFERENCE / EMOTIONAL DISTRESS

17. Plaintiff's physical condition and medical needs were documented in deputies' reception reports, as referenced in Paragraphs 6 and 7 above. While Plaintiff remained confined in the first cell, Plaintiff was handcuffed, placed into a wheelchair, and transported to the nursing facility.

18. Upon arriving at the nursing area, Plaintiff observed a deputy supervisor speaking with subordinate deputies. Plaintiff seized the opportunity to request assistance from the supervisor and sought immediate intervention regarding the deputies' gross negligence, including their deliberate disregard of Plaintiff's medical needs and the use of profanity directed toward Plaintiff.

19. Because Plaintiff himself had previously served as a law enforcement supervisor, Plaintiff understood that supervisory personnel owe a duty of care to ensure facility safety and to appropriately respond to requests for assistance. However, the supervisor refused to acknowledge Plaintiff's request and walked away without taking any corrective action. The supervisor thereby failed to uphold his duty of care, and his failure to intervene was the actual and proximate cause

-4-

of the unsafe conditions that subsequently led to Plaintiff being assaulted and emotionally traumatized.

20.      Immediately after the supervisor ignored Plaintiff's request and walked away, deputies near the nursing area began harassing, humiliating, and intimidating Plaintiff. Plaintiff is informed and believes that these deputies acted in retaliation because their conduct toward Plaintiff could have subjected them to disciplinary action for deliberate indifference and unprofessional misconduct.

21.      At that time, one deputy loudly stated, "No one is going to save you now." This retaliatory statement created a threatening and unsafe atmosphere and caused Plaintiff to fear that deputies would deny him access to his prescribed stroke medications, thereby increasing the risk of another stroke or seizure.

22.      As a direct result of the deputies' threats, intimidation, and deliberate indifference toward Plaintiff's medical needs, Plaintiff suffered severe emotional distress, anxiety, fear, humiliation, and emotional trauma. The deputies' conduct was the actual and proximate cause of Plaintiff's emotional injuries and fear of recurrence of stroke.

23.      Moments later, another deputy approached Plaintiff in an aggressive and threatening manner. The deputy stood extremely close to Plaintiff's face and repeatedly called Plaintiff a "bitch." At times, the deputy covered his mouth with his right hand and referred to Plaintiff as a "Police Battering Bitch."

24.      The deputy then repeatedly raised his right foot and made kicking motions toward Plaintiff's upper torso area. Although the deputy did not make direct physical contact with Plaintiff's body, the deputy repeatedly struck various parts of Plaintiff's wheelchair with his foot.

25.      The deputy's intentional conduct caused Plaintiff to reasonably fear immediate physical harm and battery. Plaintiff experienced severe anxiety, humiliation, intimidation, and dehumanization as a result of the deputy's threatening behavior. A wheelchair is commonly understood to be an extension of a disabled or medically impaired individual's personal space and bodily security. As such, the deputy's repeated kicking motions and physical contact with the

wheelchair constituted an assaultive act and demonstrated deliberate indifference toward Plaintiff's safety and well-being.

26.    The deputy's conduct constituted an intentional tort and unlawful assault by a public officer in violation of California law, including California Penal Code § 149.

### THIRD CLAIM FOR RELIEF

### CLAIM FOR PERSONAL INJURY / NEGLIGENCE

27.    Plaintiff was thereafter moved to a second cell following the assaultive conduct described above. Upon entering the second cell, Plaintiff observed that the cell lacked a bed, lacked a pillow, and contained a toilet exposed to public view. As a result, Plaintiff was unable to use the toilet during the entirety of his confinement in the cell without sacrificing his privacy and dignity.

28.    Because Plaintiff was forced to remain in prolonged contact with the icy cold floor, Plaintiff sustained cold-related injuries and ice burns to both legs.

29.    Under the Fourteenth Amendment, deputies owed Plaintiff a duty of care to provide reasonably safe, sanitary, and habitable conditions of confinement. Defendants knew or reasonably should have known that exposing Plaintiff to such conditions created a substantial risk of injury and harm. Nevertheless, OCSD deputies willfully disregarded Plaintiff's safety and breached their duty of care. The deputies' conduct was the direct and proximate cause of Plaintiff's injuries, including the ice burns sustained to Plaintiff's legs.

30.    Furthermore, during Plaintiff's confinement in the second cell, no deputies conducted visual welfare checks or otherwise monitored Plaintiff's physical or medical condition. Defendants thereby entirely abdicated their duty of care by failing to conduct mandatory inspections and knowingly disregarding Plaintiff's safety and medical needs.

31.    As a direct and proximate result of Defendants' deliberate indifference and negligent conduct, Plaintiff suffered physical injury, severe emotional distress, humiliation, anxiety, and mental anguish.

## FOURTH CLAIM FOR RELIEF

## VIOLATION OF EIGHTH AMENDMENT

32.    While Plaintiff was confined in the second cell, Plaintiff was provided only two brown-bag meals during a twenty-four (24) hour period, in direct contravention of OCSD Policy Manual § 2306.2, which mandates that inmates receive three meals daily, including at least one hot meal.

33.    Plaintiff was provided only two meals per day, and neither meal was served hot. Furthermore, the meals were routinely spoiled, unsanitary, and unfit for human consumption. Such conditions constituted cruel and unusual punishment and demonstrated deliberate indifference toward Plaintiff's health and nutritional needs.

34.    OCSD failed to meet basic nutritional and sanitary standards by limiting food service to two meals daily and by providing food that was unsafe and inedible. Because the meals appeared spoiled and unsafe, Plaintiff did not consume the meals during the entirety of his confinement.

35.    As a direct and proximate result of these conditions, Plaintiff lost approximately fifteen (15) pounds during his confinement at the facility. Defendants' conduct constituted deliberate indifference to Plaintiff's health, safety, and basic human needs in violation of the United States Constitution.

## FIFTH CLAIM FOR RELIEF

## FOURTEENTH AMENDMENT VIOLATION / DELIBERATE INDIFFERENCE / INTENTIONAL PHYSICAL AND MENTAL ABUSE

36.    After being confined in the second cell for approximately one day, Plaintiff was transferred to a third cell. Upon entering the cell, Plaintiff immediately observed that a thin sheet of paper had been placed over the toilet area. When Plaintiff removed the paper, Plaintiff discovered that the toilet was clogged with human feces, some of which had overflowed onto the floor surrounding the base of the toilet. Plaintiff further observed that the sink and water basin inside the cell were not functioning.

37.    Plaintiff requested that one of the deputies move him to a different cell. The deputy responded, "I don't want to, you have to stay here."

38.    The OCSD deputies intentionally confined Plaintiff in an inhumane, degrading, and unsanitary environment that was unfit for human habitation and designed to inflict physical discomfort and mental suffering. Furthermore, deputies refused to provide Plaintiff with adequate medical care and assistance, constituting deliberate indifference and cruel and unusual punishment under the United States Constitution.

39.    The deputies' refusal to provide humane living conditions and medical assistance demonstrated retaliatory conduct motivated by allegations that Plaintiff had battered a police officer.

40.    The conduct of the OCSD deputies further violated Title 15, Division 1, Chapter 1 of the California Code of Regulations, which establishes minimum standards for the operation, management, and care of incarcerated persons within detention facilities. Defendants failed to provide Plaintiff with minimally safe, sanitary, and habitable conditions of confinement.

### SIXTH CLAIM FOR RELIEF:

### FRAUD / NEGLIGENCE

41.    On or about June 21, 2025, Plaintiff was transported to a medical facility identified as "Theo Lacy." Plaintiff was transported while restrained in a wheelchair due to Plaintiff's deteriorating physical condition. Upon arrival, Plaintiff was informed by facility nursing staff that if Plaintiff wished to consult with a doctor, Plaintiff would have to wait until the following Monday because physicians did not work during weekends at the facility.

42.    Unlike the prior facility, this medical facility appeared properly maintained, and deputies assigned there acted professionally and regularly monitored Plaintiff's physical condition.

43.    The nurses and medical staff at the facility owed Plaintiff a duty of care to administer Plaintiff's prescribed stroke medications accurately, including verification of the proper medication type, dosage, and administration schedule necessary to achieve the intended therapeutic effect.

44.    However, the nurses breached their duty of care by administering incorrect medications and incorrect dosages to Plaintiff. Such conduct constituted negligence and deliberate indifference toward Plaintiff's serious medical needs in violation of Plaintiff's constitutional

-8-

rights under the Fourteenth Amendment. The consequences of administering improper medications to a post-stroke patient created a substantial and life-threatening risk of harm to Plaintiff.

45.     Furthermore, Plaintiff later discovered that the facility's "Release Document" falsely indicated that Plaintiff had been administered two additional medications and reflected incorrect dosages. Plaintiff is informed and believes that the nurses falsified medical documentation in an effort to conceal their negligence and deliberate indifference regarding Plaintiff's medical treatment.

46.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered long-term medical complications, including recurrent blackout episodes and seizures. Plaintiff now requires assistance with daily activities, including meal preparation and driving, substantially interfering with Plaintiff's quality of life and independence.

## SEVENTH CLAIM FOR RELIEF:

## FALSE IMPRISONMENT

47.     False imprisonment consists of the intentional confinement of a person within a bounded area without lawful justification and without a reasonable means of escape.

48.     The deputies at the Orange County Sheriff Department intentionally detained Plaintiff beyond the legally authorized release period in violation of California Penal Code § 825. Plaintiff was held for more than forty-eight (48) hours without lawful release and without Plaintiff's consent. Such confinement violated Plaintiff's rights under the Fourth Amendment to the United States Constitution.

49.     Because Plaintiff was confined without a reasonable means of escape and without timely release, Defendants' conduct constituted false imprisonment. Defendants' unlawful detention was the direct and proximate cause of Plaintiff's psychological injuries and emotional distress.

50.     As a result of Defendants' misconduct, Plaintiff missed the birth of his granddaughter, a significant and irreplaceable life event. The prolonged and unjustified detention caused Plaintiff severe mental anguish, emotional distress, and psychological trauma resulting from the deprivation of Plaintiff's ability to be present for the birth of his granddaughter. Defendants'

failure to release Plaintiff in a timely manner was a substantial factor in causing Plaintiff's emotional suffering.

## EIGHTH CLAIM FOR RELIEF:

## NEGLECT OF DUTIES

51.    Plaintiff was lawfully present within the OCSD facility and was entirely dependent upon Defendants for his safety, medical care, and living conditions during confinement. As such, OCSD deputies owed Plaintiff a duty of care to maintain reasonably safe conditions and to prevent foreseeable harm to Plaintiff's physical and mental well-being.

52.    Because Plaintiff was involuntarily confined and unable to protect himself or leave the premises, Defendants had a heightened obligation to inspect the facility, ensure that cells met minimum standards of sanitation and safety, and provide humane living conditions.

53.    However, Defendants breached their duty of care by confining Plaintiff in degrading, unsanitary, and dangerous conditions and by demonstrating deliberate indifference toward Plaintiff's health and safety. Defendants' repeated failures to fulfill their custodial responsibilities were the direct and proximate cause of Plaintiff's emotional distress, mental anguish, and physical suffering.

## NINTH CLAIM FOR RELIEF:

## DAMAGES / NEGLIGENCE

54.    As a result of the unlawful and abusive conduct Plaintiff experienced while confined at OCSD facilities, Plaintiff suffered substantial physical injuries, emotional distress, psychological trauma, and worsening medical complications.

55.    Defendants demonstrated a systemic failure to fulfill their duty of care toward Plaintiff because deputies believed Plaintiff had battered a police officer. Plaintiff was confined in freezing cells without a bed, exposed to unsanitary conditions involving overflowing human feces and nonfunctioning plumbing, denied proper medical care, and subjected to inaccurate and falsified medical documentation at the Theo Lacy facility.

56. Defendants additionally failed to ensure Plaintiff's timely release in accordance with California Penal Code § 825 and intentionally confined Plaintiff against his will for more than four days without lawful justification.

57. As a direct and proximate result of Defendants' misconduct, Plaintiff suffered severe emotional distress, psychological trauma, recurring seizures, blackout episodes, anxiety, sleep deprivation, humiliation, and fear.

58. Following Plaintiff's release from custody, Plaintiff has been unable to sleep due to recurring traumatic memories involving mistreatment, verbal abuse, intimidation, and assaultive conduct by OCSD deputies. Plaintiff has also developed apprehension and anxiety regarding interactions with others, particularly law enforcement officers.

### TENTH CLAIM FOR RELIEF:

### VIOLATION OF FOURTEENTH AMENDMENT / CRUEL AND UNUSUAL PUNISHMENT / USE OF EXCESSIVE FORCE

59. Each time Plaintiff was transported between OCSD facilities and the court, Plaintiff was the only inmate who was simultaneously handcuffed and shackled. Plaintiff was thereafter placed alone in a cold holding cell for periods exceeding eight (8) hours.

60. Defendants were aware that Plaintiff was a post-stroke inmate with a substantial risk of medical complications absent reasonable accommodations. During this confinement, Plaintiff sustained ice burns to his buttocks and swelling to his feet. Plaintiff also experienced significant difficulty using the toilet facilities while fully restrained in shackles.

61. Defendants' conduct in fully shackling Plaintiff and confining him in freezing conditions without medical accommodation violated Plaintiff's constitutional rights under the Fourteenth Amendment by depriving Plaintiff of basic human needs, safety, and humane conditions of confinement.

62. Furthermore, the unnecessary and indiscriminate use of shackles against Plaintiff, absent any individualized security justification, constituted excessive force and deliberate indifference toward Plaintiff's medical condition and safety.

## ELEVENTH CLAIM FOR RELIEF:

## CONSPIRACY / INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

63.     A conspiracy consists of an agreement between two or more persons to commit an unlawful act, or to commit a lawful act through unlawful means.

64.     Plaintiff is informed and believes that personnel from the Fullerton Police Department and the Orange County Sheriff Department engaged in a coordinated and informal agreement whereby information was shared indicating that Plaintiff had battered a police officer. As a result of that information, OCSD deputies intentionally neglected Plaintiff's safety, subjected Plaintiff to degrading treatment, and acted with deliberate indifference toward Plaintiff's serious medical needs.

65.     Defendants knew Plaintiff faced a substantial risk of serious harm if denied proper medical care, yet nevertheless subjected Plaintiff to repeated traumatic and stressful conditions, including intimidation, humiliation, medical neglect, and unsanitary confinement.

66.     As a direct result of Defendants' outrageous conduct, Plaintiff continues to suffer lasting psychological trauma and emotional distress following release from custody. Plaintiff frequently relives the traumatic events experienced during confinement, which continue to interfere with all aspects of Plaintiff's daily life. Plaintiff continues to suffer recurrent seizures and blackout episodes.

67.     On or about May 3, 2026, Plaintiff was admitted to the emergency department at St. Jude Hospital after exhibiting symptoms consistent with a stroke. Plaintiff remained hospitalized in the stroke unit for approximately two days.

## CONCLUSION

68.     Defendants' conduct and unprofessional behavior were unjustified and undertaken without good faith. Deputies failed to exercise appropriate discretion and neglected their legal obligations to maintain a safe custodial environment and provide adequate medical care to inmates. Rather than ensuring Plaintiff's safety and well-being, Defendants intensified Plaintiff's emotional distress and mental suffering based upon allegations that Plaintiff had battered a police officer.

-12-

69.     Defendants accepted and acted upon the Fullerton Police Department's allegations without conducting any independent assessment or investigation. Plaintiff is informed and believes that OCSD personnel collectively retaliated against Plaintiff through harassment, intimidation, neglect, and degrading treatment, causing Plaintiff severe emotional distress and psychological trauma.

70.     After Plaintiff's release, Plaintiff filed two complaints with the OCSD Internal Affairs Division regarding employee misconduct, including confinement in unsanitary conditions and false imprisonment. Plaintiff later received responses indicating that OCSD management was unable to substantiate employee misconduct. Plaintiff is informed and believes that Defendants intentionally mishandled Plaintiff's complaints in an effort to conceal employee wrongdoing and shield deputies from accountability despite evidence of unlawful and unprofessional conduct.

71.     One justification provided by OCSD management was that portions of the facility's audio recording system were not functioning. Plaintiff also received a response stating that it was "not unreasonable" for inmates to remain in custody beyond forty-eight (48) hours.

72.     Plaintiff is informed and believes that the OCSD investigative process is structured to protect deputies and conceal misconduct, thereby fostering a culture of impunity and lack of accountability. Plaintiff further believes that the misconduct experienced was not isolated but instead reflected systemic failures within the Orange County Sheriff Department, including supervisory indifference, lack of empathy, and disregard for basic human dignity.

73.     The inhumane treatment Plaintiff experienced demonstrates the dangers of unchecked authority and highlights the need for transparency, accountability, and reform within the Orange County Sheriff Department.

### CLAIM FOR DAMAGES

a). Punitive damages in the amount of $600,000.00;

b). Aggravated damages in the amount of $600,000.00;

c). Emotional distress damages in the amount of $700,000.00;

d). Injunctive and declaratory relief in the amount of $700,000.00;

e). Pre-judgment and post-judgment interest in accordance with applicable law;

f). Costs of suit to be fixed or assessed on a substantial indemnity basis.

Plaintiff declares under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**JURY DEMAND**

DATE: this ___15___ day of ___MAY___, 2026

Won Chu

-14-

| ATTORNEY OR PARTY WITHOUT ATTORNEY:        STATE BAR NO.: | FOR COURT USE ONLY |
|---|---|
| NAME: WON CHU <br> FIRM NAME: <br> STREET ADDRESS: 1800 YERMO PLACE <br> CITY: FULLERTON    STATE: CA    ZIP CODE: 92833 <br> TELEPHONE NO.:    FAX NO.: <br> E-MAIL ADDRESS: <br> ATTORNEY FOR (name): | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE <br> JUSTICE CENTER: <br> ☒ Central - 700 Civic Center Dr. West, Santa Ana, CA 92701-4045 <br> ☐ Civil Complex Center - 751 W. Santa Ana Blvd., Santa Ana, CA 92701-4512 <br> ☐ Harbor – Newport Beach Facility – 4601 Jamboree Rd., Newport Beach, CA 92660-2595 <br> ☐ North – 1275 N. Berkeley Ave., P.O. Box 5000, Fullerton, CA 92838-0500 <br> ☐ West – 8141 13th Street, Westminster, CA 92683-4593 | |
| PLAINTIFF/PETITIONER: <br><br> DEFENDANT/RESPONDENT: ORANGE COUNTY SHERIFF DEPARTMENT | |
| **ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION** | CASE NUMBER: 30-2026 <br> 01569935 |

Plaintiff(s)/Petitioner(s), WON CHU

and defendant(s)/respondent(s), ORANGE COUNTY SHERIFF DEPARTMENT

agree to the following dispute resolution process:

☒ Mediation

☐ Arbitration (must specify code)
    ☐ Under section 1141.11 of the Code of Civil Procedure
    ☐ Under section 1280 of the Code of Civil Procedure

☐ Neutral Case Evaluation

The ADR process must be completed no later than 90 days after the date of this Stipulation or the date the case was referred, whichever is sooner.

☐ I have an *Order on Court Fee Waiver* (FW-003) on file, and the selected ADR Neutral(s) are eligible to provide pro bono services.

☐ The ADR Neutral Selection and Party List is attached to this Stipulation.

We understand that there may be a charge for services provided by neutrals. We understand that participating in an ADR process does not extend the time periods specified in California Rules of Court rule 3.720 et seq.

Date: _____    _____ (SIGNATURE OF PLAINTIFF OR ATTORNEY)    _____ (SIGNATURE OF PLAINTIFF OR ATTORNEY)

Date: _____    _____ (SIGNATURE OF DEFENDANT OR ATTORNEY)    _____ (SIGNATURE OF DEFENDANT OR ATTORNEY)

**ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION**